# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**HANCOCK MECHANICAL, LLC**                                                 **PLAINTIFF**

**v.**                                                           **CIVIL NO. 1:17cv54-HSO-JCG**

**MCCLAIN CONTRACTING COMPANY, INC.**                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION [5] TO COMPEL ARBITRATION

BEFORE THE COURT is Defendant McClain Contracting Company, Inc.'s Motion [5] to Compel Arbitration. This Motion is fully briefed. For the reasons that follow, the Court finds that Defendant's Motion should be granted and this case should be dismissed.

## I. BACKGROUND

A.    Factual Background

This case arises out of work performed by Plaintiff Hancock Mechanical, LLC ("Plaintiff"), as a subcontractor for Defendant McClain Contracting Company, Inc. ("Defendant"). Defendant was the general contractor for Stennis Space Center's High Pressure Gas Facility Refurbishment Project (the "Project") at Stennis Space Center in Hancock County, Mississippi. Compl. [1] at 1-2; Mem. in Supp. [6] at 1. Before commencing work as a subcontractor on the Project, Plaintiff received drawings and specifications from Defendant for "hydrogen vent piping / welding" on the Project, and accompanied Defendant on "a physical walkthrough of the job site." Mem. in Supp. [6] at 1-2.

By correspondence dated August 29, 2016, Plaintiff submitted to Defendant a "revised quote" for the "Hydrogen Vent Piping at Building 3306 along with [a] quote for the SSC HPGF B 3306 Phase II" reflecting that the total cost for Plaintiff's work on Phase I & II of the Project would not exceed $139,808.00. Mot. to Compel, Ex. B – August 29, 2016 Correspondence [5-2] at 1. On September 5, 2016, Defendant accepted Plaintiff's proposal and directed Plaintiff to commence work, albeit with the understanding that a written subcontract would follow. Mem. in Supp. [6] at 2. Plaintiff commenced working on the Project on September 6, 2016. Resp. in Opp'n [10] at 2. The written Subcontract, which contained an arbitration provision, was emailed to Plaintiff on September 26, 2016. *Id*.

On or about December 22, 2016, Defendant discovered that Plaintiff was allegedly failing to comply with the provisions of the Subcontract by (1) falling behind Project schedule; (2) using a lower tier subcontractor to perform work on the Project without approval; (3) failing to provide a certificate of insurance or W-9 form; and (4) submitting nonconforming invoices. Countercl. [4] at 6-11. By correspondence dated that same day Defendant notified Plaintiff that if these issues were not resolved, Plaintiff would be asked to leave the project.[1] *Id*. at 9.

---

[1] Defendant's December 22, 2016, correspondence is not a part of the record. Neither party has alleged that the correspondence mentioned that the arbitration provision was a subject of any dispute.

Plaintiff ceased working on the project on December 22, 2016, apparently in response to Defendant's correspondence. Mem. in Supp. [6] at 3. Plaintiff's counsel subsequently sent a letter to Defendant on January 13, 2017, stating that Plaintiff "did not agree with the assertions in your [December 22, 2016] letter concerning the understanding of the parties or the scope of the work on this project." Compl., Ex. 1 [1-2] at 1. The letter demanded payment of outstanding invoices for labor and materials dated November 1, 2016, December 8, 2016, and December 22, 2016, which totaled of $199,499.59. Compl. [1] at 1-10.

B. <u>Procedural History</u>

On March 1, 2017, Plaintiff filed a Complaint [1] against Defendant for breach of contract, unjust enrichment, and quantum meruit, seeking payment of damages of $199,499.59, statutory attorneys' fees, pre-judgment interest, and post-judgment interest. Compl. [1] 1-3.

Defendant filed an Answer and Counterclaim [4] and a Motion [5] to Compel Arbitration and to Stay on April 6, 2017. Defendant's Motion [5] to Compel asserts that Plaintiff must submit its claims to arbitration pursuant to the terms of the Subcontract Agreement Defendant sent to Plaintiff on September 26, 2016, which reflected a start date for work of September 26, 2016, with a completion date of February 17, 2017. Contract [5-3] at 1-21. Defendant's Counterclaim [4] alleges that Plaintiff breached this Subcontract Agreement. Countercl. [4] at 6-11.

3

Defendant also asserts a claim for negligence. *Id*. at 11-12. Paragraph 22 of the Counterclaim succinctly states that Plaintiff's

> failure to timely complete its work under the Subcontract, its failure to provide required documents to McClain, its improper hiring of a lower-tier subcontractor without approval and providing a signed form 1413 to McClain, its failure to complete the work under the Subcontract properly and to the required standards, and its failure to complete its Subcontract work are each, individually, a breach of the Subcontract and evidence of Hancock's negligence.

*Id*. at 10 para. 22. The Counterclaim seeks damages in the amount of $90,522.45 for costs incurred in repairing Plaintiff's allegedly shoddy work, $189,285.81 for the cost of completing the work, attorneys' fees and costs, pre- and post-judgment interest, and liquidated damages. *Id*. at 12.

Plaintiff's Response [10] to the Motion to Compel argues that Defendant never mentioned arbitration in the discussions leading up to Plaintiff's initial proposal or in Defendant's acceptance of the proposal. Mem. in Opp'n [10] at 1-2. Plaintiff further contends that on September 5, 2016, when Defendant instructed Plaintiff to immediately commence work on the Project, Defendant did not mention an arbitration provision. *Id*. at 2. Plaintiff acknowledges that on or about September 26, 2016, Defendant did forward "a copy of the Subcontract," but claims neither party ever signed the written Subcontract. *Id*. Plaintiff continued to work on the Project until December 2016, and filed the present Complaint because Defendant refused to pay Plaintiff's invoices pursuant to the terms of their

4

"oral/implied contract." *Id*. Plaintiff takes the position that no meeting of the minds occurred with respect to the arbitration provision and that Plaintiff never agreed to arbitrate. *Id*. at 3-4.

## II. DISCUSSION

A. Relevant legal standards

Congress enacted the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. ("FAA"), to direct courts that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The effect of Section 2 of the FAA is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983).

"Congress enacted the FAA to overcome judicial resistance to arbitration, and to declare a national policy favoring arbitration of claims that parties contract to settle in that manner." *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009) (quotations omitted). "[A]ll doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). "A valid agreement to arbitrate applies unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Jones v. Halliburton Co.,*

583 F.3d 228, 235 (5th Cir. 2009) (quotation omitted). The United States Court of Appeals for the Fifth Circuit has recognized that the "purpose of the FAA is to give arbitration agreements the same force and effect as other contracts – no more and no less." *Wash. Mut. Fin. Group,* 364 F.3d at 264.

Whether to compel arbitration involves a two-step analysis to determine

> "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002). These are separate inquiries; while the strong federal policy favoring arbitration applies to the scope of an arbitration agreement, "the policy does not apply to the initial determination whether there is a valid agreement to arbitrate." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004); *see also Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002).

*Auto Parts Mfg. Miss., Inc. v. King Constr. of Houston, LLC*, 782 F.3d 186, 196-97 (5th Cir. 2015).

When a party objects to arbitration of a claim because it has not signed an agreement to arbitrate, the threshold question a court must consider is whether that party entered into a contractual agreement to arbitrate. *Id*. at 196. A court applies state contract law to determine whether the parties have agreed to arbitrate. *Kubala v. Supreme Prod. Serv.*, 830 F.3d 199, 202 (5th Cir. 2016); *Wash. Mut. Fin. Group*, 364 F.3d at 264 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

6

The parties do not appear to dispute that Mississippi contract law applies in the present case. The Mississippi Supreme Court

> " . . . has held that '[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Trinity Mission Health & Rehab. of Holly Springs v. Lawrence*, 19 So.3d 647, 651 (Miss.2009) (quoting *Pre–Paid Legal Servs., Inc. v. Battle*, 873 So.2d 79, 83 (Miss.2004)). The burden of establishing the existence of an arbitration agreement, in line with the burden of establishing the existence of a contract, rests on the party seeking to invoke it. *Trinity Mission*, 19 So.3d at 651–52 (quoting *Mariner Healthcare, Inc. v. Green*, 2006 WL 1626581 (N.D. Miss. Jun. 7, 2006)).

*Wellness, Inc. v. Pearl River Cty. Hosp.*, 178 So. 3d 1287, 1292 (Miss. 2015); *see Patterson v. Red Lobster*, 81 F. Supp. 2d 681, 686 (S.D. Miss. 1999) (finding that, pursuant to Mississippi contract law, a defendant bears the burden to prove by clear and unmistakable evidence that the parties agreed to arbitrate).

Whether parties entered into a valid arbitration agreement thus turns on state law principles governing the formation of contracts. *See Kubala*, 830 F.3d at 202 (citing *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012)). Under Mississippi law, a valid arbitration agreement exists if the elements of a contract are present in the agreement. *GGNSC Batesville, LLC v. Johnson*, 109 So. 3d 562, 565 (Miss. 2013). The elements of a contract are[:] "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal

7

prohibition precluding contract formation." *Hattiesburg Health & Rehab Center, LLC v. Brown,* 176 So. 3d 17, 21 (Miss. 2015) (quotation omitted).

A party can be held to have assented to the terms of an unsigned contract where there is evidence that the parties "acted upon the contract as if, in fact, it had been duly signed." *McInnis v. Southeastern Automatic Sprinkler Co.*, 233 So. 2d 219, 221-22 (Miss. 1970). "Mississippi law recognizes that 'acceptance of a contract as binding upon a party may be shown by his actions, and by any definite and unequivocal course of conduct disclosing that the party has acceded or assented to it,' and acceptance so manifested 'is as binding on him as had he endorsed his assent in formal writing.'" *Patterson*, 81 F. Supp. 2d at 686 (quoting *McInnis,* 233 So. 2d at 222) (quoting 17 C.J.S. Contracts § 58 (1963)).

B. <u>Defendant has carried its burden of showing that Plaintiff agreed to the arbitration provision in the Subcontract.</u>

The sequence of events leading up to this litigation is not in dispute. On September 5, 2016, Defendant accepted Plaintiff's proposal to act as a subcontractor on the Project and directed Plaintiff to begin work, albeit with the understanding that a written subcontract would follow. Plaintiff began working on the Project on September 6, 2016. The written Subcontract, containing an arbitration provision, was emailed to Plaintiff on September 26, 2016, but the Subcontract was never signed. Plaintiff continued working on the project until December 22, 2016, when Plaintiff received correspondence from Defendant pointing out alleged deficiencies

8

in Plaintiff's work. On March 1, 2017, Plaintiff filed a Complaint asserting a claim for breach of contract. The issue before the Court is whether Plaintiff's claim is subject to the arbitration provision in the Subcontract. Based upon the record before the Court, there does not appear to be any dispute that, with the exception of mutual assent, all other elements necessary for formation of a contract under Mississippi law are present.

The record reflects that when Plaintiff began work on the Project on September 6, 2016, it was on notice that a written Subcontract formalizing the parties' agreement would be forthcoming. Plaintiff received the Subcontract twenty days later on September 26, 2016. Upon receipt of the anticipated Subcontract, Plaintiff did not lodge any concerns or complaints with Defendant about the arbitration provision or any other provision. Instead, Plaintiff continued to work on the Project for approximately three additional months before ceasing work on December 22, 2016.

There is no evidence in the record that prior to December 22, 2016, either party notified the other that it was not acting in furtherance of the terms of the Subcontract. It was not until after December 22, 2016, when Defendant sent Plaintiff a letter, which is not in the record, about the scope of the work, that Plaintiff responded on January 13, 2017, with a demand letter, voicing disagreement with Defendant's position about "the understanding of the parties or

9

the scope of the work on the Project." Compl., Ex. 1 [1-2] at 1. It is also noteworthy that Plaintiff's Complaint asserts a claim for breach of contract, and it was not until Plaintiff's Response [10] to the Motion [5] to Compel Arbitration that Plaintiff took the position that the contract between the parties was oral or implied.

Based upon the record as it stands before the Court, Defendant has demonstrated that all of the elements necessary for contract formation are present and that Plaintiff's objective conduct in continuing to work on the Project after receipt of the Subcontract containing the arbitration provision is sufficient to establish that Plaintiff agreed to be bound by the terms of the Subcontract. *See McInnis,* 233 So. 2d at 221-22.

C.  The dispute in question falls within the scope of the arbitration provision.

There is a strong presumption in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1054 (Miss. 2004). Accordingly, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone*, 460 U.S. at 24-25; *see Slater-Moore v. Goeldner*, 113 So. 3d 521, 528-29 (Miss. 2013). Indeed, the Fifth Circuit has "held that arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) (quotation omitted).

The arbitration provision states, in pertinent part, that if the parties fail "to settle any dispute or claim that may arise, except as otherwise provided in this Agreement, [the parties] shall thereupon make the same a matter of arbitration . . . ." Mot. to Compel, Ex. C – Subcontract [5-3] at 2. Plaintiff has not denied that, if it is bound to the terms of the Subcontract, its claims are arbitrable.

The Court finds that Plaintiff's breach of contract claim against Defendant falls within the parameters of the arbitration provision because Plaintiff is challenging Defendant's actions under the Subcontract. *See Terminix Int'l, Inc.*, 904 So. 2d at 1055. This dispute is therefore subject to arbitration.

D. <u>This case will be dismissed rather than stayed.</u>

"Section 3 of the FAA mandates that when an issue is referable to arbitration pursuant to a written agreement, the district court must 'stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.'" *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 659 (5th Cir. 1995) (quoting 9 U.S.C. § 3). "If a dispute is subject to mandatory . . . arbitration procedures, then the proper course of action is usually to stay the proceedings pending arbitration." *Ruiz v. Donahoe*, 784 F.3d 247, 249 (5th Cir. 2015).

"However, a dismissal may be appropriate 'when all of the issues raised in the district court must be submitted to arbitration.'" *Id.* at 249-50 (quoting *Alford*

11

*v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *see also Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013) ("Although Section 3 of the Federal Arbitration Act directs district courts to stay pending arbitration, we are bound by our precedent which states that dismissal is appropriate 'when all of the issues raised in the district court must be submitted to arbitration.'") (quoting *Alford*, 975 F.2d at 1164).

Because all issues raised in this case arise out of the contractual agreement between the parties and appear to be subject to the arbitration provision, dismissal is appropriate.

### III.  CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. Defendant McClain Contracting Company, Inc.'s Motion [5] to Compel Arbitration will be granted, and the parties will be ordered to submit the disputed matter to arbitration. This case will be dismissed.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant McClain Contracting Company, Inc.'s Motion [5] to Compel Arbitration is **GRANTED**, and the parties are ordered to submit the disputed matter to arbitration.

**IT IS, FURTHER ORDERED AND ADJUDGED** that, this case is **DISMISSED**.

**SO ORDERED AND ADJUDGED**, this the 2nd of February 2018.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE